FANNIE SANDLER *vs.* MAX SILK & others.

Suffolk. November 6, 1929. — January 2, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction*, To relieve from results of fraud. *Fraud. Mortgage*, Of real estate: validity, assignment, foreclosure.

Although title to land purchased was taken in the name of a "straw," who thereupon gave a mortgage thereof to the real owner without consideration, but at a time when neither was financially embarrassed; and subsequent assignments of the mortgage, a foreclosure thereof by the last assignee and deeds of the land from him to himself and from him to another were fraudulent since they were intended to defeat an attachment of the land which had been made subsequent to the giving of the mortgage and previous to the assignments, the attachment nevertheless was subject to the mortgage, and the foreclosure thereof and the deeds could not be set aside, if the original acquisition of title by the "straw" and the giving of the mortgage were not done with intent to hinder, delay or defraud creditors and were not directly related to the subsequent fraudulent dealings with the land.

BILL IN EQUITY, filed in the Superior Court on March 1, 1928, against Max Silk, Sam Tefft, Robert L. Trachtenberg, Thomas M. Smith and Harry Marcus, to set aside the foreclosure in 1928, by the defendant Tefft as assignee, of a second mortgage given by the defendant Smith upon his land to the defendant Marcus on July 16, 1923; and to set aside subsequent deeds from Tefft to himself and from him to the defendant Trachtenberg.

The bill contained allegations that the second mortgage

had been given without consideration and with intent to hinder, delay and defraud creditors of Smith and Marcus; that it had been foreclosed, and the deeds given, with intent to deprive the plaintiff of her rights under an attachment of the land made by her on March 25, 1924, in the action at law against Smith and Marcus described in the opinion. Other material portions of the pleadings are described in the opinion.

The suit was heard by *Greenhalge*, J., a stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). Material facts found by the judge are described in the opinion. By order of the judge, a final decree was entered dismissing the bill. The plaintiff appealed.

The case was submitted on briefs.

*T. H. Mahony & H. E. Ehrlich*, for the plaintiff.

*S. Sigilman*, for the defendant.

CROSBY, J. On or about March 22, 1924, the plaintiff brought an action in the Superior Court against the defendants Smith and Marcus to recover damages for personal injury, and an attachment was made of all the real estate owned by Smith and Marcus in Suffolk County. The defendants were defaulted and damages were assessed by the court in the sum of $3,000 and judgment and execution issued therefor, together with $30.70 costs of suit. An execution issued which was delivered to the sheriff of Suffolk County and a seizure of the real estate was made on January 26, 1928, on the attachment made March 25, 1924. The execution remains unsatisfied. A demurrer to the bill was filed by the defendant Trachtenberg, and was sustained as to paragraphs 8, 9, 10, 11 and 13; no appeal was taken by the plaintiff from the order sustaining the demurrer.

The trial judge in the present suit at a hearing on the merits stated that the defendants admitted at the trial that on January 26, 1928, notice of a sheriff's sale was published in a Boston newspaper, of the right, title and interest which the defendant Smith had in a certain parcel of land situated in Boston, a particular description of which was set forth in the notice of sale; and that the defendants

at the trial admitted the truth of the allegations contained
in the seventh paragraph of the plaintiff's bill, which is as
follows: "That at the time said attachment was made the
said property stood in the name of said Thomas M. Smith,
subject to a first mortgage of $4,000, at that time held by
Sumner Robinson, Trustee, and recorded in Suffolk Reg-
istry, Book 4529, Page 49, and a second mortgage from
said Smith to said Harry Marcus, dated July 16, 1923, for
$1000, payable on demand, and recorded with Suffolk Reg-
istry, Book 4489, page 182, which said second mortgage on
or about July 24, 1924, was assigned by said Marcus to one
Nathan Lewis, and recorded in said Registry, book 4601,
page 12, and subsequently assigned by said Lewis to said
Max Silk, on October 22, 1926, recorded in said Registry,
book 4845, page 346, and still later assigned by said Silk to
said Samuel Tefft, on October 25, 1926, and recorded in said
Registry, book 4845, page 346."

After the attachment was made a third mortgage was
placed upon the property by Smith to the defendant Tefft
on October 21, 1926, in the sum of $3,500, and was duly
recorded. Thereafter on October 25, 1926, a fourth mort-
gage was placed upon the property by Smith to the de-
fendant Silk and was duly recorded.

The judge found, in accordance with the twelfth para-
graph of the bill, that Trachtenberg "is a straw holder of
title" for Silk and has no interest in the property, and
Silk is the owner of the equity, and the holder of any in-
terest or title nominally held by Trachtenberg. In accord-
ance with the fourteenth paragraph he found that the
plaintiff by registered mail notified the defendant Tefft
and his attorney Rubin of the proposed sheriff's sale, and
that the plaintiff's attorney was told by Rubin that the
second mortgage would not be foreclosed without notifica-
tion to the plaintiff.

The bill alleges in part as follows: "16. That on January
21, 1928, the said Tefft, without notice to your petitioner or
any junior lien holder, undertook and purported to foreclose
said second mortgage, and, at an alleged foreclosure sale on
January 21, 1928, said property was conveyed to himself

for $1,200, said deed being recorded in said Registry February 10, 1928, Book 4977, page 26.  17. That on January 21, 1928, said Tefft made an entry upon the said premises under and by virtue of said second mortgage so assigned to the said Tefft for the purpose of foreclosing the same, and on February 10, 1928, the said Tefft recorded with said deeds an Evidence of Possession, setting forth that he had made said entry under and by virtue of said second mortgage, said Evidence of Possession being recorded in said Registry, Book 4977, page 26.  18. That, upon information and belief, said second mortgage was without any consideration and was intended for the purpose of hindering, defrauding and delaying creditors of said Smith and Marcus, and known so to be made by all the defendants.  19. That, upon information and belief, the said alleged foreclosure of the second mortgage was attempted by reason of a fraudulent agreement and conspiracy entered into by and between said Silk, said Tefft and said Trachtenberg for the purpose of unlawfully depriving the petitioner of her rights under said attachment.  20. That on February 17, 1928, said property was conveyed by said Tefft to said Trachtenberg, as your petitioner is informed and believes, in pursuance of said fraudulent conspiracy and without consideration, said deed being recorded in said Registry, book 4979, page 68."

The judge stated that at the trial the defendants admitted the truth of the allegations in the sixteenth and seventeenth paragraphs.  As to the eighteenth, nineteenth and twentieth he found as follows: In 1923, the defendant Marcus purchased the property subject to a first mortgage of $4,000, taking title in the name of Smith.  There was no evidence that at that time either Marcus or Smith was insolvent or financially embarrassed.  Thereafter, on July 16, 1923, Smith gave a mortgage to Marcus for $1,000, for which there was no consideration and no mortgage note was ever executed by Smith.  On March 25, 1924, the plaintiff attached the property in an action of tort in which Smith was named as defendant and later Marcus was joined as a party defendant.  On or about July 24, Marcus assigned the second mortgage to one Lewis, a brother-in-law of the defend-

ant Silk; on October 22, 1926, this mortgage was assigned by Lewis to Silk, and on October 25 Silk assigned it to the defendant Tefft. On October 21 a third mortgage was given by Smith to Tefft for $3,500, and on October 25 a fourth mortgage was given by Smith to Silk for $2,700; there appears to have been some consideration for the third and fourth mortgages, but the second mortgage was assigned by Marcus to Lewis without payment of any kind. On July 20, 1927, the fourth mortgage was foreclosed and the property ultimately deeded to Silk. On January 21, 1928, Tefft foreclosed the second mortgage and purchased the property at the foreclosure sale for the sum of $1,200. On January 25, 1928, the plaintiff, who had obtained a judgment against Marcus and Smith in the tort action in the sum of $3,000, with costs of $30.70, and taken out an execution thereon, began proceedings to sell the property on execution sale. On February 17, 1928, Tefft conveyed the property to the defendant Trachtenberg. The judge further found that the testimony of the defendants Silk, Tefft and Trachtenberg "was vague, evasive and wholly unsatisfactory," but that the evidence of the plaintiff as a whole in his opinion fairly warranted the conclusion that the assignment of the second mortgage to Lewis and the subsequent dealings of the defendants with the property were designed to defeat the attachment of the plaintiff and were carried out in pursuance of a common purpose to vest the beneficial interest in, if not the title to, the property, in Silk. Notwithstanding these subsequent fraudulent acts he states: "I do not find, however, that the original acquisition of title by Smith as a 'straw' for Marcus or the giving of the second mortgage by Smith to Marcus formed any part of such common design or purpose or was directly related to the subsequent transactions." He further found that there was no evidence that the conveyance by Marcus to Smith or the giving of the second mortgage by Smith to Marcus was intended to delay or defraud creditors.

The evidence before the trial judge was taken by a stenographer; it is embodied in the record and consists of more than one hundred and fifty printed pages. An examination

of it plainly warrants the finding that the testimony of some of the defendants "was vague, evasive and wholly unsatisfactory." The judge saw the witnesses and heard their testimony and was in a better position to judge of its credibility than we are from the printed record. The result of his findings is that although the assignment of the second mortgage by Marcus to Lewis and the subsequent transactions respecting this mortgage were fraudulent and designed in pursuance of a common purpose to defeat the attachment and to vest the beneficial interest, if not the title, in Silk, he does not find that the deed to Smith as a straw for Marcus, or the giving of the second mortgage by Smith to Marcus, was any part of a common purpose to hinder, delay or defraud creditors, or that it directly related to the subsequent fraudulent transactions.

It results that upon the findings, which cannot be said to be erroneous, the attachment was subject to the second mortgage. It follows that the final decree dismissing the bill must be affirmed, with costs.

*Ordered accordingly.*