DAVID SHIKES & another *vs.* ZEENA GABELNICK & others.

ZEENA GABELNICK & another *vs.* DAVID SHIKES & others.

Suffolk.   March 31, September 10, 1930. — November 25, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, SANDERSON, &
FIELD, JJ.

*Contract,* Rescission, Performance and breach, Validity. *Equity Pleading
and Practice,* Appeal, Findings by judge. *Equity Jurisdiction,* Re-
scission, Specific performance, Plaintiff's clean hands.

False statements, made previous to a sale of property by the seller to the
buyer, to the effect that the seller had received certain offers for the
property, are not actionable by the buyer.

Although false representations, made by one party to a contract for the
sale of land to the other party, but not relied upon by the second party
in entering into the contract, are not sufficient to entitle the second
party to rescind the contract and do not bar the first party from
recovering damages for breach thereof, they require a court of equity
to refuse to grant to the first party relief by way of specific performance
of the contract. Following *Brockton Olympia Realty Co.* v. *Lee,* 266
Mass. 550.

Upon appeal from a final decree entered in a suit in equity for specific
performance of a contract for the sale of real estate, where the evi-
dence was taken by a stenographer appointed under G. L. c. 214,
§ 24; Equity Rule 29 (1926), the question, whether a sound judicial
discretion resting on established principles of equity requires the
granting or refusal of relief by way of specific performance, is for this
court.

Two BILLS IN EQUITY, filed in the Superior Court on
June 22, 1928, and July 5, 1928, respectively, and described
in the opinion.

The plaintiffs in the first bill, which was amended,
were David Shikes and Philip B. Long, copartners. The
defendants were Sarah H. Shikes, Frances M. Long and
Bessie Gabelnick, wives respectively of David Shikes, Philip
B. Long and Zeena Gabelnick and "joined only as nominal"
parties; Marx Spitz; and Zeena Gabelnick. The plaintiffs
in the second suit were Zeena and Bessie Gabelnick. The

defendants were David and Sarah H. Shikes, Philip B. and Frances M. Long, and Marx Spitz.

The suits were heard together by *Qua,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material findings by the judge, and a final decree entered in each suit by his order, are described in the opinion. The plaintiffs appealed in the first suit. All the defendants, except Spitz, appealed in the second suit.

The cases were argued on March 31, 1930, before *Rugg,* C.J., *Crosby, Pierce, Carroll, & Field,* JJ., and on September 10, 1930, were submitted on briefs on reargument, to all the Justices excepting *Wait,* J.

*F. W. Knowlton,* (*A. A. Silton & B. Potter* with him,) for Shikes and another.

*A. W. Rockwood,* for Gabelnick and others.

CARROLL, J. These two suits in equity were tried together in the Superior Court. Number 31968 was brought by Shikes and Long, a copartnership, hereinafter spoken of as the sellers, against Gabelnick, hereinafter referred to as the buyer, and Spitz, a real estate broker. The bill asked for the cancellation and rescission of an agreement for the exchange of real estate, and of a contract with Spitz for a broker's commission. This agreement for the exchange of the properties is dated May 1, 1928. Number 32034 was a suit brought by the buyer against the sellers for specific performance of the same agreement. The evidence is reported. In number 31968 a decree was entered dismissing the bill against all the defendants except Spitz. As to Spitz the sellers were ordered to pay him a commission of $1,500. The sellers appealed. In number 32034 specific performance of the agreement was ordered, and a commission was directed to be paid to Spitz. The sellers appealed.

The buyer owned property on Lowell Street, Boston; the sellers were the owners of real estate in Medford. The agreement in question related to the exchange of these properties between the sellers and the buyer. The judge found that the buyer made false representations to the sellers, saying, in effect, that the occupant of the adjoining store, number 16 Lowell Street, was paying a yearly rental

of $6,000; that he had to pay a bonus of $15,000 " to get the
key "; that he spent $7,000 for fixtures. The facts as found
by the judge were that one Omansky had in July, 1925,
taken a lease of number 16 Lowell Street to begin in Feb-
ruary, 1926, at a total rent of $67,000, of which $15,000
was paid before the term began, $5,000 was to be paid
each year for eight years, and $6,000 each year for the re-
maining two years of the term; that $5,000 was spent on
fixtures, furnishings and repairs; that on November 28,
1927, Omansky's firm made an assignment in bankruptcy;
that a corporation was formed and bought the fixtures for
$1,209.14; that the creditors took a new lease for the unex-
pired term agreeing to pay $5,000 a year up to the last two
years and $6,000 a year for the remaining two years; that
the creditors of Omansky " put the new corporation in as
a subtenant to the creditors at a rent of $10,000 per year ";
that when the representations were made the corporation
was a tenant of the creditors and Omansky was in charge
of the store. It was found that the rent of $10,000 bore no
relation to the fair rental value of the property, that prob-
ably the rent was fixed at this sum in order to enable the
creditors " in appearance at least, to recoup themselves for
their losses through the failure of the store." The judge
did not find that these representations concerning the store
number 16 Lowell Street were known to Gabelnick to be
false. It was found that he did not intend to deceive, but
that he made these representations as of his own knowledge.

It was further found that the buyer said to the sellers
that he was doing a gross business of $250,000 a year. This
representation it was found was false. Gabelnick knew it
was false and made it with intent to deceive. It was also
found that the buyer stated to the sellers that he had been
offered $6,000 a year for the Lowell Street property and a
bonus of $25,000 for a lease of the store, and had been of-
fered $60,000 for the property as a whole. These state-
ments were false, and were made as of his own knowledge
intending to deceive the sellers. These particular repre-
sentations, it was ruled, following *Commonwealth* v. *Quinn*,
222 Mass. 504, 512, were not actionable. The judge further

found that the sellers did not rely on any of the false representations and were not induced by them to enter into the agreement.

The cases were heard by a judge of the Superior Court. His findings are not to be reversed unless upon a review of the evidence we are satisfied that he was plainly wrong. He saw the witnesses; he could judge of their truthfulness. The sellers were experienced operators in Boston real estate, and, as found, were intelligent, shrewd and capable business men. It was found that, if they really relied on his statements, they could have investigated for themselves and would not have had difficulty in discovering their falsity. The sellers stated that they relied on the representations made by the buyer. But the judge was not required to believe this testimony. He could have found, as he did, that they did not believe the Lowell Street property was worth $60,000, and that they were willing to take it as they saw it because of the price they were to receive for the Medford property. On a review of all the testimony, we see no reason for setting aside the decision of the judge that the sellers did not rely on the false representations of the buyer. *Sandler* v. *Silk,* 269 Mass. 562, 566, 567. *Levin* v. *Bernstein,* 269 Mass. 542, 543. *R. E. McDonald Co.* v. *Finkovitch,* 270 Mass. 362, 366. The judge was right in ruling that the buyer's statements concerning offers he had received for his property were not actionable. *Commonwealth* v. *Quinn,* 222 Mass. 504.

In number 32034 specific performance was decreed of the exchange of the properties according to the agreement of May 1, 1928. It is contended that notwithstanding the false and fraudulent statements made by Gabelnick, these misrepresentations were not relied on by the sellers, that therefore the decree ordering specific performance was right.

It has been held in a number of decisions outside of this Commonwealth that misrepresentations to be a defence to a bill in equity for specific performance must have been relied on, that no damage is suffered when fraudulent statements are not relied on; that fraud without damage is no defence to the suit in equity and no defence to the prayer

for specific performance. But in this Commonwealth it has been held that where misrepresentations have not been relied on, the party making the false statements is not entitled to specific performance although the other party did not rely on these statements. *Brockton Olympia Realty Co.* v. *Lee*, 266 Mass. 550. In that case misrepresentations were made but were not relied on by the defendants. The effect of these misrepresentations is discussed on pages 557, 558, 559 and 560 of the opinion, and it was held that misrepresentations not relied on were not a defence to the suit; but because of the plaintiff's fraudulent conduct it could not have specific performance (pages 562, 563). In *Banaghan* v. *Malaney*, 200 Mass. 46, the defendant made a written agreement to convey her real estate to the plaintiff. The plaintiff's agent suspected that a railroad company desired to acquire the defendant's real estate, and without disclosing this suspicion induced the defendant to agree to sell. Specific performance was refused and the bill dismissed. This court said at page 49: " It is true that the agreement was good and sufficient upon its face; the defendant was legally competent to make it; and it was not obtained by such fraud or misrepresentation as would give the defendant a right to avoid it. But this is not enough to entitle the plaintiff as a matter of right to enforce specific performance. His right to this remedy is not an absolute one. It rests in the sound discretion of the court. It may be refused to one who has been guilty of any unfair conduct or has taken any inequitable advantage of the other party to the agreement, even though there is no sufficient ground for the rescission of the agreement." In the *Banaghan* case the plaintiff endeavored to mislead the defendant but she was not the victim of fraud and suffered no damage by reason of what is considered fraud in law. The plaintiff did not go far enough to accomplish such a fraud as would give the defendant the right to avoid the contract, but because of the attempt to deceive the defendant and the inequitable conduct of the plaintiff he was refused specific performance. This principle is applicable here. Gabelnick attempted to deceive the sellers by his false

representations. He intended to deceive them. He knew his statements were false. The agreement could not be rescinded because the sellers did not rely on this fraud. But he intended to deceive the sellers — he made the attempt to defraud them — and while he can recover damages, in the opinion of the majority of the court he should not be allowed to have specific performance of a contract in securing which he resorted to inequitable conduct and adopted means which are not to be approved in equity. By his own conduct he has forfeited the right to have a court of equity aid him in enforcing a contract when he has knowingly undertaken to induce the other party to enter into it by material misrepresentations. He does not come into court with clean hands.

A plaintiff seeking specific performance must himself be free from blame. If he has been guilty of unfair conduct, though not enough to warrant a rescission of the agreement, specific performance is refused because of his inequitable and unfair conduct. In the case at bar the statements made by Gabelnick were false and known to be such when made, they were not relied on and because of this were sufficient in the exercise of a sound judicial discretion to prevent the equitable relief of specific performance. The rule is stated by Braley, J. in *Howe* v. *Chmielinski,* 237 Mass. 532 at page 536: " A plaintiff who has engaged in inequitable conduct having an immediate and necessary relation to the matter for which he seeks relief will not be aided by a court of equity, and it is wholly immaterial in the case at bar that the defendant, also an undisclosed participant, has not been harmed but generally benefited." See *Florimond Realty Co. Inc.* v. *Waye,* 268 Mass. 475, 478. Specific performance has been frequently refused on grounds of equitable considerations even where there has been no fraud. *Curran* v. *Holyoke Water Power Co.* 116 Mass. 90. *Chute* v. *Quincy,* 156 Mass. 189. *Richardson Shoe Machinery Co.* v. *Essex Machine Co.* 207 Mass. 219, 225. *Wentworth* v. *Manhattan Market Co.* 216 Mass. 374, 380.

The trial judge found there was fraud but that the sellers did not rely on it. From these findings it does not follow

that specific performance should be granted. It is not a matter of right. Ordinarily, however, specific performance of a fair agreement for the sale of real estate is required by courts of equity in the absence of special circumstances rendering it inequitable. *Forman* v. *Gadouas,* 247 Mass. 207, 212. But if there is fraud, deceit, a failure to do equity, or inequitable conduct, though not enough to deprive the plaintiff of his right to damages, a sound judicial discretion resting on established principles of equity requires a refusal of specific performance. A court of equity does not lend its aid to parties who themselves resort to unjust and unfair conduct. This question is one for this court to decide. In *Brockton Olympia Realty Co.* v. *Lee, supra,* the decision of the trial judge was reversed. See *Rubenstein* v. *Lottow,* 220 Mass. 156, 168. The whole case is before us on the appeals on questions of law and fact. *Martell* v. *Dorey,* 235 Mass. 35. *O'Riorden, petitioner,* 244 Mass. 472. In *Danforth* v. *Chandler,* 237 Mass. 518, the trial judge dismissed the bill. In this court the decree was reversed and specific performance ordered. On appeal in equity when the evidence is reported such a decree should be entered as justice requires and specific performance should be refused in the exercise of a sound discretion when the party seeking this relief has himself been guilty of inequitable conduct. See *Wentworth* v. *Manhattan Market Co.* 216 Mass. 374, 385; *Weinstein* v. *Miller,* 249 Mass. 516, 520, and cases cited. See also *Westall* v. *Wood,* 212 Mass. 540; *Barrell* v. *Britton,* 258 Mass. 383, 387.

It should be noted that the order for the decree was filed March 25, 1929, although the final decree was entered November 1, 1929. The opinion in *Brockton Olympia Realty Co.* v. *Lee, supra,* was not filed until March 29, 1929, and the trial judge could not have had this case in mind when he made the order for a decree.

It is not argued that the decree directing the payment of a commission to Spitz was wrong, and we do not discuss it.

The sellers argue that they should be allowed compensation for collecting rents and caring for the Medford property. We do not think it necessary to consider this

question. The buyer is not entitled to specific performance and the sellers have no ground for the rescission of the contract.

The decree in number 31968 dismissing the bill as to all the defendants except Spitz was right. It was also right in ordering the payment of $1,500 to Spitz; it should be modified as to time by directing that the commission be paid within thirty days of the date of the rescript.

The decree in number 32034 ordering the specific performance of the agreement of May 1, 1928, for the exchange of the properties is to be modified, by ordering that specific performance be refused and the case retained for the assessment of damages. The portion of this decree relating to the payment of a commission to Spitz by Gabelnick is to stand, except that it is to be modified by making it payable within thirty days of the date of the rescript.

*Ordered accordingly.*