Riley, J.
This is an action of tort. The plaintiff’s declaration is as follows:
“And the plaintiff says that on or about March 15, 1938 he entered into a contract with the defendant to purchase from the defendant a 1934 Ford Sedan by the terms of which contract the plaintiff agreed to pay the defendant therefor the sum of One Hundred Thirty ($130:00) Dollars and to deliver to the defendant a Pierce Arrow Coupe valued by the parties in the sum of Forty ($40.00) Dollars; that the plaintiff carried out and performed his part of said contract; that the defendant in order to and for the purpose of inducing the plaintiff to enter said contract, falsely and fraudulently represented said Ford Sedan to have a good motor in 100% working condition; that the- plaintiff believing and relying upon the truth of said representations was induced to enter into said contract; that in truth and fact, said 1934 Ford. Sedan did not have a good motor in 100% working condition but had a motor, the block of which was cracked; that as a result thereof, the plaintiff purchased an automobile worth little or nothing and has incurred expense for its repairs and for the loss of its use . . . all to the plaintiff’s great damage.”
*96 The defendant’s answer contains a general denial and the special defense that “the defendant says that on March 1, 1938 the plaintiff entered into a written contract with the defendant, a copy of which is in the hands of the plaintiff, that in accordance with said written contract the plaintiff agreed that the entire agreement effecting the purchase of the automobile, referred to in the plaintiff’s declaration, was contained in said contract; and the defendant says that the said contract is á complete bar to this action. ’ ’
At the trial there was evidence tending to show that on March 18, 1938 the plaintiff entered into negotiations with one Melvin Hershon, a salesman, in the employ of the defendant for the purpose of purchasing an automobile from the defendant; that on March 18, 1938 the plaintiff and defendant executed a written contract, a copy of which was introduced in evidence.
The following pertinent provisions appear in said written contract:
“The front and back of this order comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized.
“All previous communications, either verbal or written, with reference to the subject matter of this order, are superseded hereby and merged herein, and this order, duly accepted, constitutes the sole agreement as to the subject matter thereof. No representations, agreements or warranties, express or implied, other than those set forth herein, shall be binding upon any party hereto. No modifications of this agreement, subsequent to the acceptance hereof by the vendor, shall be binding unless in writing, signed by the vendee and duly accepted by the vendor.”
*97 In the course of the trial, the following question was put to the plaintiff in direct examination by his counsel:
“What conversation relating to the said 1934 Ford Sedan did you and Melvin Hershom have prior to the execution by you and the defendant of the written instrument for the purchase by you of that 1934 Ford Sedan?”
This question was excluded upon objection of the defendant. The following offer of proof was then made:
.. By such question and answer thereto the party asking the same expected the answer that the said automobile was a good buy, that its motor was in perfect condition, that its motor was in 100% working condition, that the only thing wrong with the automobile was that one of its fenders had a dent which the defendant promised to repair.
The plaintiff requested that the said ruling be reported.
The court found for the defendant.
The question presented on this report is whether or not the trial judge erred in excluding the evidence offered.
A reading of the excluded question clearly indicates that it is directed to a conversation antecedent to the execution of the written contract. Consequently the proffered evidence places this case in that class of cases where the fraud alleged is antecedent to the contract, as distinguished from fraud which enters into the making of the contract. Colonial Development Corporation v. Bragdon, 219 Mass. 170. While the principle of law, that a party cannot by written words prevent the court from inquiry as to fraud in the substance of a contract, is well established, Butler v. Prussian, 252 Mass. 265, 268, Granlund v. Saraf, 263 Mass. 76, it is equally true, that where parties execute a written contract, and do not stipulate or provide therein as to prior representations and negotiations, and an action at law is brought either on the contract or in tort for deceit, and evi *98 dence as to antecedent representations and negotiations is offered, that such evidence is admissible. Reinherz v. American Piano Co., 254 Mass. 411, and Connelly v. Fellsway Motor Car Co., 270 Mass. 386. If the evidence offered tended to disclose fraud in the. substance of the contract, it would be admissible, not to vary or add to the writing, but to show that the writing was never executed, or that it was voidable because of fraud: O’Donnell v. Clinton, 145 Mass. 461 or, if it tended to identify the subject matter of the writing, it would be admissible to enable the court to apply the writing to the subject matter. Butler v. Prussian, 252 Mass. 265, Noack v. Standard Stores Inc., 281 Mass. 53.
Proceedings in equity seeking specific performance of a contract are governed by the general principles of equity, and a court exercising general equity jurisdiction cannot be prevented by contractual terms from receiving evidence tending to prove fraud.
It is well established that a contract, valid in law courts, need not always be enforced in an equity court. Equity proceedings and the instant action are distinguishable. Granlund v. Saraf, 263 Mass. 76, Florimond Realty Co. Inc. v. Waye, 268 Mass. 475.
Therefore, we are of opinion that the evidence offered and excluded in the instant case was properly excluded, it being apparent that the provision of the written contract hereinbefore set forth, to which the parties had agreed and under which they must be bound, expressly stipulated as to antecedent representations and negotiations. Colonial Development Co. v. Bragdon, 219 Mass. 170, Eastern Advertising Co. v. Patch, 235 Mass. 580.
Fully realizing that the necessity of legislation on this subject is not the province of' a court, we are constantly mindful, however, that justice under the law is the great purpose of all courts. And, although not necessary to a determination of this case, it may not be inappropriate at *99 this time, in view of the subject matter here under consideration, to comment briefly.
It is a matter of common knowledge that written contracts of the type herein discussed are used in making sales to persons, many of whom have little or no knowledge of the portent of such documents. This type of contract, bearing as it does the earmarks of an intensive study of decided cases, is invariably produced by the seller rather than by the buyer; and, it usually contains a stipulation nullifying all the previous talks and representations which occurred leading up to the actual sale.
The meaning of such stipulation briefly stated being, “All I have said to you and represented to you to induce this sale, is now wiped out, — and you cannot hold me to any of it.”
Such contracts are sound in law, but hard in justice.
Apparently, the late Chief Justice Rugg had some such thought on the matter when he was prompted to make the aside which appears in the case of Colonial Development Corp. v. Bragdon, 209 Mass. 170, in these words, “This seems a hard case.” In the twenty-five years since that was written, many cases have been decided and many opinions written, in many of which the same remark might well have been made.
The instant case seems to be an equally “hard ease.”
Report dismissed.